## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

_____

Nº 20-CV-2943 (PKC) (RER)
_____

INNOVATIVE SPORTS MANAGEMENT, INC., D/B/A INTEGRATED SPORTS MEDIA,

Plaintiff,

VERSUS

CARLOS MEJIA, INDIVIDUALLY AND D/B/A LIMA RESTAURANT; AND LIMA RESTAURANT CORP., D/B/A LIMA RESTAURANT,

Defendant.

_____

**REPORT & RECOMMENDATION**

August 3, 2021
_____

**TO THE HONORABLE PAMELA K. CHEN**
**UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**[1]

Innovative Sports Management, Inc., doing business as Integrated Sports Media, ("Plaintiff") brought this action against Carlos Mejia ("Mejia") and Lima Restaurant Corp. ("Lima Restaurant") (collectively, "Defendants") for pirating Plaintiff's satellite and cable transmission in violation of 47 U.S.C. §§ 553, 605.[2] (Dkt. No. 1 ("Compl.") ¶¶ 29–37, 38–45). Plaintiff now moves for default judgment and requests statutory and enhanced damages, plus pre- and post-judgment interest,

---

[1] Lauren Brady, a rising second-year student at Brooklyn Law School and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

[2] Although the Complaint asserts claims under Sections 553 and 605, Plaintiff's Memorandum in Support of the Motion for Default Judgment requests damages only under 605. (Dkt. No. 9-1 ("Pl.'s Mem.") at 4).

1

attorney's fees, and costs. (Dkt. No. 9 ("Pl.'s Mot.") ¶¶ 3.d.5–3.d.6). Your Honor referred this motion to me for a report and recommendation. (Order dated 1/18/2021).

For the following reasons, I respectfully recommend that Plaintiff's motion be granted in part. Default judgment against Mejia should be denied, but granted against Lima Restaurant in the amount of $3,742.50, plus post-judgment interest, and reasonable attorney's fees and costs to be determined at a later date.

## BACKGROUND

Plaintiff owns licenses to distribute pay-per-view sports events to venues across the country via cable and satellite transmission. (Dkt. No. 9-2 ("Jacobs Aff.") ¶ 3).[3] These venues must pay a fee in exchange for the ability to display the match to patrons. (Compl. ¶ 22; Jacobs Aff. ¶ 8). Each of Plaintiff's broadcasts are encrypted for security concerns. (Jacobs Aff. ¶¶ 9, 11). Once a venue enters into a sub-license agreement with Plaintiff, the venue is then directed to "unscramble" the code attached to the satellite signal. (Compl. ¶¶ 20, 24–25). Establishments, like Lima Restaurant, who wish to avoid the sub-license fee "pirate" or illegally access these matches through various means. (Jacobs Aff. ¶ 10).

Plaintiff entered into an exclusive license agreement with Lions Sports and Media, S.A., an Argentinian producer, to broadcast the Chile v. Peru, International Friendly Soccer Game (the "Game") which took place on October 12, 2018. (Compl. ¶ 19; Dkt. No. 9-3, Ex. A ("License Agreement") at 19). Plaintiff "expended substantial monies marketing, advertising, promoting, administering, and transmitting [the Game] to its commercial customers." (Compl. ¶ 23). Plaintiff also issued sub-licenses to various venues in New York under the terms of the license agreement.

---

[3] Douglas Jacobs ("Jacobs") is the President of Innovative Sports Management. (Jacobs Aff. ¶ 1).

2

(*Id.* ¶ 22). Lima Restaurant never paid the $1,500 sub-license fee and thus was not authorized to display the Game.[4] (*See id.* ¶ 28).

Investigator Gary Joseph ("Joseph") searched the New York area on Plaintiff's behalf for venues pirating the Game and found that Lima Restaurant was one of the transgressors. (*See* Jacobs Aff. at ¶ 7). Joseph recorded that the Game was displayed on five televisions, seventy-five patrons were in attendance, and Lima Restaurant did not institute a cover charge to patrons. (Joseph Aff. at 32–33). However, Joseph's report did not include information about Lima Restaurant advertising the Game, patrons purchasing food or drink, or food or drink prices being inflated because of the Game. (*See id.*).

Plaintiff alleges that Mejia is the "Owner and Principal of Lima Restaurant Corp." (Compl. ¶ 9). Plaintiff also claims that Mejia is the "Principal for Lima Restaurant Corp. on the New York State Liquor Authority License" and "the sole individual identified on the On Premises Liquor License." (*Id.* ¶¶ 10–11).

Relying on such allegations of authority, Plaintiff asserts further claims against Mejia, namely that he had the "right and ability" as well as "the obligation to supervise the activities" related to the Game. (Compl. ¶¶ 12–13). Moreover, Plaintiff also claims that Mejia "specifically directed the employees" of the restaurant to display the Game, "had an obvious and direct financial interest" manifesting itself in "increased profits or financial benefit," and "was a moving and active

---

[4] Plaintiff's licensing fee is contained in a rate card. (Jacobs Aff., Ex. 2 at 16). A venue is charged a certain amount to display a broadcast based on its maximum capacity. (*See id.*). Here, Lima can accommodate approximately 200 patrons, thus mandating a $1,500 fee. (*Id.*; *see also* Dkt. No. 9-3, Ex. 5 ("Joseph Aff.") at 33). Although Plaintiff alleges that the fee would have been $1,000, (Compl. ¶ 28), potential damages "require an independent evidentiary determination," *J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc.*, No. 15-CV-3771 (ILG), 2017 WL 933079, at *3 (E.D.N.Y. Mar. 8, 2017) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Therefore, the Court relies on the rate card and Joseph's report to calculate the would-be licensing fee for Lima Restaurant. (Joseph Aff. at 33).

3

conscious force behind the operation [and] advertising . . ." of the display of the Game, but provides nothing beyond such bare conclusions to support these statements. (*Id.* ¶¶ 14–17).

Plaintiff brought this action on July 2, 2020.[5] (Dkt. No. 1). Mejia and Lima Restaurant were served, respectively, on July 16, 2020, and July 20, 2020, but failed to answer. (Dkt. Nos. 5–6; *see* Dkt. No. 8). Plaintiff requested a certificate of default, which was entered by the Clerk of the Court. (Dkt Nos. 7–8). Plaintiff then filed its motion for default judgment on October 5, 2020. (Pl.'s Mot.). Your Honor referred the motion to me on January 18, 2021. (Order dated 1/18/2021).

## LEGAL STANDARD

### I.     Default Judgment

Rule 55 of the Federal Rules of Civil Procedure "prescribes a two-step process for obtaining a default judgment." *J & J Sports Prods., Inc. v. Exclusive Lounge & Grill Inc.*, No. 15-CV-6534 (ILG), 2017 WL 1082416, at *2 (E.D.N.Y. Mar. 22, 2017). First, a plaintiff must request the clerk of the court to enter the non-responsive defendant's default. *See* Fed. R. Civ. P. 55(a). Second, once the clerk has entered default, the plaintiff must "apply to the court for a default judgment." Fed R. Civ. P. 55(b)(2). Thereafter, the court must "determine whether the plaintiff's allegations establish the defendant's liability as a matter of law," *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011), accepting all of the plaintiff's allegations as true and drawing all reasonable inferences in their favor, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

---

[5] This Circuit has adopted the three-year statute of limitations from the Federal Copyright Act, 17 U.S.C. § 507(b), for claims concerning cable piracy. *Nat'l Satellite Sports, Inc. v. Time Warner Ent. Co.*, 255 F. Supp. 2d 307, 314 (S.D.N.Y. 2003). Because Plaintiff filed its complaint about one year and nine months after the activity occurred, this action is timely. (*See* Dkt. No. 1).

4

## II.      The Federal Communications Act

The Federal Communications Act (the "Act") authorizes the federal government and the Federal Communications Commission to enact safeguards related to wire and radio communications.[6] 47 U.S.C. § 151. The Act allows plaintiffs to recover damages incurred from unauthorized wire or radio transmissions. 47 U.S.C. § 605(e). Section 553 prohibits unauthorized persons from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). On the other hand, Section 605 prohibits unauthorized persons from "intercept[ing] any radio communication and divulg[ing] or publish[ing] the . . . contents . . . of such intercepted communications to any person." 47 U.S.C. § 605(a). When there is one illegal transmission, courts limit damages to those awarded under Section 605 instead of Section 553. *See Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993) ("If [§ 605] was violated and [plaintiff] was aggrieved thereby, the court should grant [plaintiff's] request for damages under § 605(e) instead of granting the lesser damages available under § 553.").

Plaintiffs must establish that the infringing activity originated via radio transmission to maintain their claim under Section 605. *See J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, No. 08-CV-1824 (RJD) (VVP), 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (adopting R. & R.). At the default judgment stage, Courts in this District accept bare allegations that the broadcast originated via satellite transmission. *See Garden City Boxing Club, Inc. v. Focused Enters.*, No. 06-CV-4874 (FB) (RER), 2007 U.S. Dist. LEXIS 107033, at *3 (E.D.N.Y. May 9, 2007), *adopted by* 2007 U.S. Dist. LEXIS 41211 (June 4, 2007).

---

[6] Satellite signals are a form of radio communication. *See Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 112 (E.D.N.Y. 2011).

## **LIABILITY**

Plaintiff alleges that the Game "originated via satellite uplink" and was distributed via satellite signal. (Compl. ¶ 24). Therefore, Plaintiff has sufficiently alleged a basis for its Section 605 claim. *See J & J Sports Prods., Inc. v. His & Hers Bar & Lounge Inc.*, No. 17-CV-4181 (ADS) (GRB), 2018 WL 4925706, at *3 (E.D.N.Y. Aug. 31, 2018) (accepting allegations "that electronic decoding equipment and satellite coordinates were necessary to receive the signal for the event" as sufficient for a Section 605 claim), *adopted by* 2018 WL 4922912 (Oct. 9, 2018).

I will examine the liability in two parts: (1) Lima Restaurant's liability, and (2) Mejia's vicarious and contributory liability.

### I.     **Lima Restaurant Is Liable.**

Plaintiff has alleged that Lima Restaurant violated Section 605 by showing the Game to patrons via unencrypted satellite signals. (Compl. ¶¶ 24, 32, 35). For a plaintiff to prove an unauthorized transmission: (1) plaintiff must have an exclusive license that restricts legal broadcasting to establishments contained in a sublicense agreement; (2) plaintiff and defendant cannot be parties to a contractual agreement pertaining to the broadcast of the program; and (3) the defendant establishment must have displayed the program. *J & J Sports Prods., Inc. v. Salinas*, No. 17-CV-6820 (DLI) (RER), 2018 U.S. Dist. LEXIS 180973, at *7 (E.D.N.Y. Oct. 17, 2018), *adopted sub nom J & J Sports Prods., Inc. v. Friolan*, 2019 U.S. Dist. LEXIS 57792 (Mar. 31, 2019).

First, Plaintiff submitted the exclusive licensing agreement it entered into with Lions Sports & Media S.A. that restricted the Game's broadcast to venues in New York that purchased a sub-license. (License Agreement at 19–24; *see also* Compl. ¶¶ 19–22). Next, there is no contractual agreement between the parties pertaining to the Game, and Plaintiff alleges that Lima Restaurant

did not pay any sub-license fee. (Compl. ¶¶ 20–22, 28). Finally, Lima Restaurant displayed the Game on five televisions to seventy-five patrons on October 12, 2018. (*Id.* ¶ 26). Thus, Lima Restaurant transmitted the game without prior authorization.

Accordingly, I respectfully recommend that default judgment be entered against Lima Restaurant.

**II.     Mejia Is Not Liable.**

Although not addressed in the memorandum in support of the motion for default judgment, the Complaint suggests that Plaintiff seeks to hold Mejia liable for violating Section 605 on theories of vicarious and contributory liability. (*See* Compl. ¶¶ 12–17). Plaintiff's assertion of Mejia's liability on both theories fails due to insufficient allegations of Mejia's personal involvement in the Game's display.

    A.  Vicarious Liability

When determining vicarious liability, courts consider an individual's: (1) "right and ability" to supervise the infringing activity and (2) "obvious and direct financial interest" in displaying the exclusively licensed materials. *J & J Sports Prods., Inc. v. Ahuachapan Corp.*, No. 17-CV-01184 (LDH) (PK), 422 F. Supp. 3d 652, 659 (E.D.N.Y. 2019) (adopting R. & R.).

Courts in this District are split on what allegations sufficiently support vicarious liability. *See, e.g., J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc.*, No. 17-CV-2196 (ARR) (CLP), 2018 WL 1725692, at *1–2 (E.D.N.Y. Apr. 10, 2018) (collecting cases), *adopting R. & R.*, 2018 WL 2078482 (Feb. 27, 2018); *J&J Sports Prods., Inc. v. 88-18 Tropical Rest. Corp.*, No. 17-CV-02620 (DLI) (RER), 2018 U.S. Dist. LEXIS 56970, at *9–10 (E.D.N.Y. Mar. 30, 2018) (collecting cases). In general, boilerplate allegations are insufficient and the plaintiff must allege concrete details

7

about the establishment owner's role in the activity and the amount or source of revenue potentially stemming from the activity. *See J & J Sports Prods., Inc. v. Gonzalez*, No. 18-CV-2319 (RRM) (RER), 2019 WL 3716197, at *7 (E.D.N.Y. May 9, 2019), *adopted by* 2019 WL 4888635 (Sept. 30, 2019); *see generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'").

        *i.*      *Vicarious Liability: Owner's Supervision of the Activity*

Courts in this District have imposed vicarious liability from an establishment owner's ability to supervise the alleged activity when the plaintiff presents evidence of the owner's role in the corporation, typically as the chief executive officer. *See Ahuachapan*, 422 F. Supp. 3d at 659; *J & J Sports Prods., Inc. v. Usman*, No. 17-CV-5335 (NG) (VMS), 2019 WL 6777387, at *3 (E.D.N.Y. Dec. 12, 2019) (finding defendant director and chief executive officer vicariously liable based on cover charge). Courts have also required plaintiffs to introduce evidence from state records establishing defendants as corporate officers. *See J & J Sports Prods., Inc. v. Inga*, No. 18-CV-2542 (PKC) (RLM), 2019 WL 1320278, at *5 (E.D.N.Y. Mar. 22, 2019).

Although Plaintiff alleges that Mejia is the "Owner and Principal" of Lima Restaurant Corp. and the "sole individual identified on the On Premises Liquor License," Plaintiff does not identify how these allegations impose any duty to supervise activities related to the display of the Game. (Compl. ¶ 12). Plaintiff also does not present supporting evidence of Mejia's role within the corporation, such as state records. (*See id.* ¶¶ 12–13, 15, 17). There is no evidence that Lima Restaurant instituted a cover charge on the night of the Game. (Joseph Aff. at 32–33). Instead, Plaintiff merely concludes that Mejia therefore "had the right and ability . . ." and "obligation to supervise the activities of Lima Restaurant." (Compl. ¶¶ 12–13). These vague and conclusory allegations are insufficient to hold Mejia vicariously liable based on his alleged authority. *See*

8

*J & J Sports Prods., Inc. v. Espinal*, No. 19-CV-5180 (PKC) (RER), 2020 WL 2747981, at *3 (E.D.N.Y. May 26, 2020) (denying vicarious liability when plaintiff did not supplement conclusory allegations about defendant's authority with facts); *Inga*, 2019 WL 1320278, at *5 (failing to accept allegations about defendants' roles in corporation without further evidence).

   ii.  *Vicarious Liability: Financial Interest*

Even if Plaintiff established that Mejia had the right and authority to supervise the display of the Game, Plaintiff must also prove financial gain. *See J & J Sports Prods., Inc. v. LX Food Grocery*, No. 15-CV-6505 (NGG) (PK), 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016). For example, concrete evidence of cover charges paid by patrons to enter the establishment, increased prices on food and drink, or the establishment being at or over the maximum capacity tip the scale in favor of vicarious liability. *See, e.g.*, *Usman*, 2019 WL 6777387, at *3 ("conclud[ing] that the cover charge establishes [defendant's] obvious and direct financial interest in the exploitation of the copyrighted materials." (quotations omitted)); *J & J Sports Prods., Inc. v. McAdam*, No. 14-CV-5461 (PKC) (CLP), 2015 WL 8483362, at *2–3 (E.D.N.Y. Dec. 9, 2015) (finding defendant's financial interest when restaurant implemented cover charge and was at or over capacity).

Here, Plaintiff claims that Mejia had "an obvious and direct financial interest in the activities of Lima Restaurant." (Compl. ¶ 15). Plaintiff also alleges that Mejia made increased profits from advertising and food or drink sales. (*Id.* ¶ 16). But these allegations are conclusory in nature and lack support from the record. *See LX Food Grocery*, 2016 WL 6905946, at *3 (holding that plaintiff did not prove vicarious liability because it failed to present evidence about monetary activity on the night of program's display); *Monte Limar*, No. 15-CV-3771 (ILG), 2017 WL 933079, at *3 (E.D.N.Y. Mar. 8, 2017) (finding generic allegations about defendant's financial interest without facts insufficient for vicarious liability). For example, Joseph noted that seventy-

9

five patrons were present and that there was no cover fee. (Joseph Aff. at 33). But Joseph failed to include whether premiums were placed on food or drinks; and whether patrons purchased food or drinks. (*See id.*); *see also LX Food Grocery*, 2016 WL 6905946, at *3 (finding no vicarious liability without cover charge, surcharge on goods during event, or allegations of patrons' spending). Thus, Plaintiff has inadequately alleged Mejia's financial interest in displaying the Game.

\*     \*     \*

In this regard, Mejia cannot be held vicariously liable for displaying the Game because his role on the liquor license and in the corporation does not predicate full authority and control over the establishment's activities, and evidence of food, beverages, and additional establishment charges or expenses is lacking.

B. <u>Contributory Liability</u>

When determining an individual's contributory liability, courts must consider whether the individual authorized or materially contributed to the alleged violations. *J & J Sports Prods., Inc. v. Dominguez*, No. 19-CV-5110 (RPK) (SLT), 2020 WL 6434735, at *3 (E.D.N.Y. Sept. 16, 2020), *adopted by* 2020 WL 6400700 (Nov. 1, 2020). Courts will deny liability when the crux of a plaintiff's pleadings involves restatements of statutes or legal standards. *Salinas*, 2018 U.S. Dist. LEXIS 180973, at *10 ("[T]he Court is not obliged to accept as true bare regurgitations of statutes or case law: a defendant is not deemed to admit a 'plaintiff's rote legal conclusions' on default.") (quoting *J & J Sports Prods., Inc. v. James*, No. 17-CV-5359 (NGG) (ST), 2018 U.S. Dist. LEXIS 126308, at *5 (E.D.N.Y. July 25, 2018), *adopted by* 2018 U.S. Dist. LEXIS 136471 (Aug. 13, 2018)).

Here, Plaintiff alleges that Mejia "specifically directed" his staff to display the game and was "responsible for all activities" related to the display, but these allegations are conclusory and completely devoid of supporting evidence. (Compl. ¶¶ 14, 17). Without further support from the record, this Court cannot accept conclusory allegations to satisfy the requirements for contributory liability. *E.g., Salinas*, 2018 U.S. Dist. LEXIS 180973, at *10 (denying contributory liability when plaintiff merely alleges that the requirements for such are present); *J&J Sports Prods., Inc. v. Dang*, No. 19-CV-5112 (ARR) (RER), 2020 WL 6364898, at *4 (E.D.N.Y. Oct. 13, 2020) (finding that defendant cannot admit contributory liability through default without additional evidence), *adopted by* 2020 WL 6363905 (Oct. 29, 2020). Thus, Mejia cannot be held contributorily liable.

*   *   *

Accordingly, I respectfully recommend that Your Honor deny the motion for default judgment against Mejia.

## DAMAGES

Plaintiff seeks an award of $3,000 in statutory damages, $9,000 in enhanced damages, plus pre- and post-judgment interest, attorney's fees, and costs under Section 605. (Pl.'s Mot. ¶¶ 3.d.5–3.d.6). As mentioned above, courts do not automatically accept a moving party's allegations related to damages in a motion for default judgment. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Moreover, plaintiffs must establish the need for a damages award through evidence. *See id.* For the reasons stated below, I respectfully recommend that Plaintiff be awarded statutory damages of $1,871.25 and enhanced damages of $1,871.25 for a total award of $3,742.50, along with post-judgment interest, attorney's fees, and costs to be determined at a later date.

11

I.     **Statutory Damages**

In a cause of action under Section 605, an injured party can recover actual or statutory damages. 47 U.S.C. §§ 605(e)(3)(C)(i)(I–II). Here, Plaintiff seeks statutory damages. (Pl.'s Mot. ¶ 3.d.5). Courts have discretion to award statutory damages between $1,000 to $10,000. 47 U.S.C. § 605(e)(3)(C)(i)(II). To determine the appropriate amount, courts in this Circuit utilize either the "flat fee" or "per person" method, awarding the higher of the two. *Espinal*, 2020 WL 2747981, at *4. Under the flat fee method, the plaintiff receives the amount equal to the licensing fee associated with the particular program. *Id.* Under the per person method, the plaintiff receives damages "equal to the amount an individual consumer would have paid to view the [event or program] . . . multiplied by the number of consumers who watched the illegally transmitted [event or program]." *Id.* (alternations in original) (citing *LX Food Grocery*, 2016 WL 6905946, at *4).

Plaintiff alleges that Lima Restaurant fits 200 patrons. (Joseph Aff. at 33). Therefore, according to the rate card provided by Plaintiff, Lima Restaurant would have paid $1,500.00 in licensing fees to display the Game under the flat-fee method.[7] (Jacobs Aff., Ex. 2). On the other hand, the seventy-five patrons at Lima Restaurant would have paid $24.95 each to watch the Game via their cable or satellite provider. (License Agreement, §2(d)). Therefore, under the per-person method, Plaintiff would recover $1,871.25.[8] Because courts in this Circuit award the higher of the two methods, the per-person method is the appropriate approach.

---

[7] To justify its request for statutory damages, Plaintiff cites to the testimony of Mr. Gagliardi, President of J&J Sports Productions, Inc. (*See* Pl.'s Mem. at 9); *see also J & J Sports Prods., Inc. v. El Ojo Aqua Corp.*, No. 13-CV-6173 (ENV) (JO), 2014 WL 4700014, at *1 (E.D.N.Y. Aug. 29, 2014), *adopted by* 2014 WL 4699704 (Sept. 22, 2014). The Court presumes that Plaintiff intended to reference Jacobs, President of Plaintiff. (*See* Jacobs Aff. ¶ 1).

[8] $24.95 X 75 = $1,871.25

12

Instead, Plaintiff requests $3,000 in statutory damages—double the amount indicated on Plaintiff's rate card for venues of Lima Restaurant's size. (*See* Pl.'s Mem. at 5; Jacobs Aff., Ex. 2). Plaintiff also argues that the Court should not use either of the above approaches. (Pl.'s Mem. at 6). Plaintiff believes the flat fee method fails to consider the financial implications of pirated programs and that the per person method downplays the seriousness of the illegal display. (*Id.* at 6–7). However, the argument for an inflated damages award is without merit. Courts in this District routinely reject similar arguments for heightened statutory damages. *See, e.g.*, *Joe Hand Promotions, Inc. v. Khan*, No. 17-CV-3744 (PKC) (RER), 2018 WL 3635054, at *3 (E.D.N.Y. May 21, 2018) (finding that the flat fee method provides adequate compensation), *adopted by* 2018 WL 3217411 (July 2, 2018); *J & J Sports Prods., Inc. v. El Coyote Carpau Inc.*, No. 14-CV-3642 (PKC), 2014 WL 5147629, at *3 (E.D.N.Y. Oct. 14, 2014) (holding that the traditional flat fee method is conducive to deterring future instances of piracy); *Inga,* 2019 WL 1320278, at *6 (declining to award plaintiff's request of three times the flat fee method). Thus, I reject Plaintiff's argument for enhanced statutory damages and respectfully recommend that Plaintiff be awarded statutory damages of $1,875.25.

## II.     Enhanced Damages

Under Section 605, an injured party can recover enhanced damages no greater than $100,000 if "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private gain." 47 U.S.C. § 605(e)(3)(C)(ii). Courts in this District consider five factors to assess willfulness: "(i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, Inc.*, No. 14-CV-2765 (JG) (JMA), 2014

13

U.S. Dist. LEXIS 179281, at *9 (E.D.N.Y. Dec. 12, 2014) (collecting cases), *adopted by* 2015 U.S. Dist. LEXIS 431 (Jan. 5, 2015). If none of the factors are applicable, deterrence concerns and the unauthorized display of the program in and of itself can prompt courts to award enhanced damages. *Dang*, 2020 WL 6364898, at *5; *J & J Sports Prods., Inc. v. Cineus*, No. 18-CV-5109 (AMD) (PK), 2021 WL 829397, at *8 (E.D.N.Y. Feb. 2, 2021), *adopted by* 2021 WL 826013 (Mar. 4, 2021).

Plaintiff requests $9,000 in enhanced damages, three times the requested statutory damages. (*See* Pl.'s Mot. ¶ 3.d.5). In addition, Plaintiff alleges that Mejia "was a moving and active conscious force behind the . . . advertising and promotion of Lima Restaurant" on the night of the Game, and that the broadcast was "intentionally intercepted." (Compl. ¶¶ 14, 17; *see* Pl.'s Mem. at 9). These conclusory allegations standing alone are insufficient to award enhanced damages. *See El Ojo Aqua*, 2014 WL 4700014, at *6 (finding enhanced damages inappropriate when plaintiff did not provide "evidence of willfulness"). However, I find that a modified enhanced damages award is necessary for deterrence purposes. *See Espinal*, 2020 WL 2747981, at *5 (awarding enhanced damages when plaintiff did not allege any willfulness factors); *El Coyote Carpau*, 2014 WL 5147629, at *4 (awarding enhanced damages equal to statutory damages to address willful nature of pirated broadcast and deterrence); *Dang*, 2020 WL 6364898, at *5 (awarding enhanced damages equal to statutory damages when no willfulness factors were applicable). Thus, I respectfully recommend that Plaintiff be awarded enhanced damages of $1,871.25, the amount equal to statutory damages, for a total award of $3,742.50.

### III.  Pre- and Post-Judgment Interest

Plaintiff has requested pre- and post-judgment interest at the federal statutory rate with a thirty-day leave to submit required documents after the Court enters judgment. (Pl.'s Mot. ¶¶ 3.d.5, 3.d.7).

First, while Section 605 does not expressly provide for pre-judgment interest, courts in this Circuit have the discretion to award such interest when doing so is "fair, equitable, and necessary to compensate the wronged party fully." *J & J Sports Prods., Inc. v. Leon*, No. 18-CV-2103 (PKC) (RML), 2019 WL 1320277, at *7 (E.D.N.Y. Mar. 22, 2019) (citing *Wickham Contracting Co. v. Loc. Union No. 3, IBEW*, 955 F.2d 831, 835 (2d Cir. 1991)). However, courts have denied pre-judgment interest for deterrence purposes when other damages adequately address this issue. *See Inga*, 2019 WL 1320278, at *7; *Espinal*, 2020 WL 2747981, at *6.

Here, Plaintiff has not provided information to support its request for pre-judgment interest. (*See* Pl.'s Mem. at 4–11).[9] Nevertheless, because of my recommendation that Plaintiff be awarded both statutory and enhanced damages, I respectfully recommend that Plaintiff's application for pre-judgment interest be denied. *See J & J Sports Prods., Inc. v. Shaw*, No. 19-CV-2383 (AMD) (ST), 2020 WL 1034361, at *6 (E.D.N.Y. Feb. 12, 2020) (recommending denying pre-judgment interest award because other damages awards provided sufficient compensation to plaintiff), *adopted by* 2020 WL 1031804 (Mar. 3, 2020).

---

[9] Plaintiff also waited almost two years to commence this action against Defendants. (*See* Compl. ¶ 26; Dkt. No. 1). While courts have not declined pre-judgment interest solely based on this factor, a plaintiff's delay in filing suit can tip the scales against an interest award. *See El Coyote Carpau*, 2014 WL 5147629, at *5 (denying pre-judgment interest award because plaintiff delayed filing suit by two years); *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983) (indicating that pre-judgment interest can be limited or denied when plaintiff "has been responsible for undue delay" in filing the lawsuit).

Second, while Section 605 itself does not provide for post-judgment interest, 28 U.S.C. § 1961 is applicable to claims under the Act.[10] *See Inga*, 2019 WL 1320278, at *7. Plaintiff has requested post-judgment interest in its motion for default judgment but not in the complaint.[11] (Pl.'s Mot. ¶ 3.d.5).

Nevertheless, courts in this District have awarded post-judgment interest without a request for such interest in the complaint and when pre-judgment interest has been denied. *See Espinal*, 2020 WL 2747981, at *6; *Inga*, 2019 WL 1320278, at *7. Therefore, I respectfully recommend that Plaintiff's application for post-judgment interest be granted.[12] *E.g., Dominguez*, 2020 WL 6434735, at *7.

### IV. Attorney's Fees and Costs

Under Section 605, courts "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Here, Plaintiff has requested thirty days to submit a motion for attorney's fees and costs. (Pl.'s Mot. ¶¶ 3.d.6–3.d.7). Plaintiff's counsel has been admonished in the past that such piecemeal motion practice places an unnecessary burden on the Court. *See Dang*, 2020 WL 6364898, at *6 ("[T]his is not efficient, and there is no reason why J&J could not have submitted a properly supported attorney's fees application along with its Default Motion."); *J & J Sports Prods., Inc. v. Rinconcito Dominicano, LLC*, No. 18-CV-2319 (RRM) (RER), 2021 U.S. Dist. LEXIS 118453, at *9

---

[10] 28 U.S.C. §§ 1961(a)–(b) permits injured parties to recover interest accrued on a monetary damages award, with interest calculated retroactively "from the date of the entry of the judgment."

[11] Under Rule 54 of the Federal Rules of Civil Procedure, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

[12] Because "[p]ost-judgment interest accrues at the federal statutory rate," it is unclear why Plaintiff has requested thirty days to submit its request for interest. *J & J Sports Prods., Inc. v. Morocho*, No. 18-CV-2303 (AMD) (RML), 2019 WL 1339198, at *7 (E.D.N.Y. Feb. 27, 2019), *adopted by* 2019 WL 1333245 (Mar. 25, 2019).

16

(E.D.N.Y. June 24, 2021) ("[T]his Court is loath to encourage piecemeal litigation"). Nevertheless, I respectfully recommend that Your Honor permit Plaintiff thirty days to move for attorney's fees and costs. This application should be submitted before the entry of the default judgment so that the judgment can include whatever amounts are properly awarded, and should be properly supported with contemporaneous time records and other documentation as required in this Circuit.[13]

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's motion for default judgment be granted in part as follows: (1) judgment be entered against Lima Restaurant for $3,742.50, plus post-judgment interest, and reasonable attorney's fees and costs to be determined at a later date; and (2) Plaintiff be given thirty days to submit a properly supported application for fees and costs. I also respectfully recommend that Your Honor deny Plaintiff's motion as to Mejia.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Pamela K. Chen within fourteen days. Failure to file timely objections

---

[13] At a minimum, a properly supported application for attorney's fees and costs should include contemporaneous time records and receipts for and proof of costs. *E.g., Joe Hand Promotions, Inc. v. Soviero*, No. 11-CV-1215 (NGG) (CLP), 2012 WL 3779224, at *11 (E.D.N.Y. July 31, 2012) (citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983)), *adopted by* 2012 WL 3779221 (Aug. 30, 2012). Plaintiff's counsel is unaccustomed to submitting such supporting documentation and has been admonished for not doing so. *See J & J Sports Productions, Inc. v. Dang, et al.*, No. 19-CV-5112 (ARR) (RER), 2021 WL 2636172 (E.D.N.Y. Jun. 9, 2021), *adopted by* 2021 WL 2634787 (Jun. 25, 2021). In the future, should Plaintiff's counsel continue to fail to submit the proper documentation for attorney's fees and costs along with Plaintiff's motion for default judgment, the Court should not hesitate to summarily deny the request for a thirty-day extension to apply for such fees and costs. Again, there is no reason why counsel cannot submit a properly supported application for attorney's fees and costs along with Plaintiff's motion for default judgment.

may waive the right to appeal the District Court's final order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: August 3, 2021
Brooklyn, NY